SILVER MOTOR FREIGHT LINES, Inc., et al. v. AUTOMATIC WEB GUIDE CO.

No. 34358. Oct. 21, 1952.

Rehearing Denied Nov. 12, 1952.

*249 P. 2d 994.*

Satterfield, Franklin & Harmon, Harvey L. Harmon, and Lybrand & Morgan, Oklahoma City, for plaintiffs in error.

Sam M. Williams, Oklahoma City, for defendant in error.

BINGAMAN, J. This action was brought by Automatic Web Guide Company, a corporation, as plaintiff, against Silver Motor Freight Lines, Inc., and Harvey Jones, d.b.a. Jones Truck Line, to recover the value of an automatic web guide manufactured by plaintiff and shipped over the lines of defendants to the Sylvania Industrial Corporation at Fredericksburg, Virginia. In its amended petition plaintiff alleged that the machine had not been delivered to the consignee nor had it been returned to the shipper, but had been lost by the negligence and carelessness of the defendants. In their answers defendants alleged, among other things, that the claim of plaintiff for the value of the machine was not timely filed as required by the bill of lading issued to plaintiff. The case was tried to the court, jury being waived by all parties, and at the conclusion of the evidence the trial court rendered judgment for plaintiff against both defendants. Defendants appeal.

The only question presented is whether the failure of plaintiff to file a claim with either of the defendants within the time specified in the bill of lading precluded it from maintaining its action. From the testimony it appears that the merchandise was tendered for shipment to Silver Motor Freight Lines on September 3, 1946, and that the claim was not filed until June of 1948, although on March 31, 1948, plaintiff wrote a letter to the defendant Silver Motor Freight Lines advising it of the loss of the machinery.

A photostat copy of the bill of lading is contained in the record, but much of it is illegible. However, the parties agree that among other provisions, the bill of lading contains the one following:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property, or in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed * * *."

A witness for defendant testified that a reasonable time for delivery would have been in the neighborhood of thirty days. The answers of both defendants pleaded lack of notice within the time specified in the bill of lading.

The evidence reflects that plaintiff's president visited the Sylvania Industrial Corporation at Fredericksburg, Virginia, which had previously bought a machine from plaintiff, which machine for some reason the purchaser was unable to operate; that plaintiff's president agreed with them to send a new machine to replace the old one and the Sylvania Industrial Corporation agreed that as soon as the new machine was received the old one would be shipped to plaintiff. It further appears that after the Silver Motor Freight Lines had transported the machine to a certain point it turned it over to the defendant Harvey Jones as a connecting carrier, and that Harvey Jones thereafter transmitted it to a certain point and turned it over to another motor carrier, Hayes Freight Lines, which found that it was unable to transport the machine to Fredericksburg, Virginia, on any of its connecting lines. What became of the machine is not shown, although the Hayes Company, in a letter produced in evidence, stated that

they were returning the machine to the plaintiff.

The above-quoted provision in the bill of lading was authorized by the Interstate Commerce Act, commonly known as the Carmack Amendment, 49 U.S.C.A. §20 (11), which, among other things, provided, in part, as follows:

"Provided further, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

While that act applied to the transportation of merchandise by railroads it was made applicable to motor carriers by 49 U.S.C.A. §319.

Defendants urge that the claim having been filed long after the expiration of nine months, plus a reasonable time for delivery, the plaintiff is now precluded from maintaining the action and recovering the value of the merchandise, citing numerous authorities to that effect. The plaintiff does not question these authorities but contends that it was the duty of the carrier to notify it that the goods had not been delivered; that no notice was given to it by the carrier, and that therefore the nine months' period provided in the bill of lading, and the statute above quoted, did not begin to run until it had actually discovered that the machine had not been delivered. In support of this assertion it cites numerous cases from various states, such as Stoddard Lumber Co. v. Oregon-Washington R. & Nav. Co., 84 Ore. 399, 165 P. 363, 4 A. L. R. 1275, Rountree v. Lydick-Barmann Co. (Tex. Civ. App.) 150 S.W. 2d 173, and various other decisions by state courts. It is significant, however, that no Federal case is cited in support of this contention.

We are unable to agree with the contention of plaintiff. In Chesapeake & Ohio R. Co. v. Martin, 283 U.S. 209, 75 L. Ed. 983, 51 S. Ct. 453, the Supreme Court of the United States held that the question of whether or not the claim had been filed in time in respect to an interstate shipment was a Federal question, to be determined by the application of the Federal law, citing a number of its prior decisions. In that case the court also cited with approval Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U. S. 197, 60 L. Ed. 952, 36 S. Ct. 541, to the effect that the bill of lading was a contract for interstate shipment, made pursuant to the Interstate Commerce Act, and that the carrier could not waive any of its terms or provisions. It further held that the carrier could not by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement, and that a different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed.

There is no provision either in the Act of Congress or in the bill of lading requiring the defendants to give notice to plaintiff in the event they are unable to make delivery of the shipment. Even if such duty rested upon it at common law, as stated in some of the cases cited by plaintiff, the carrier, under the decision in Chesapeake & Ohio R. Co. v. Martin, could not waive compliance with the provision or by its conduct in failing to give notice give the shipper the right to ignore the terms of the provision in the bill of lading. Irrespective of the question of notice or lack of notice by the carrier of its inability to make delivery, we think, under the plain provisions of the statutes and the bill of lading, it was the duty of plaintiff to ascertain whether or not the merchandise had been delivered in such time as would enable it to make its claim against the carrier within the time provided in the law and in the bill of lading. In the instant

case it appears that the plaintiff made no effort to ascertain whether the machine had been delivered, and apparently made no effort to ascertain whether the machine to be shipped to it by Sylvania Industrial Corporation had been returned. That machine was to be returned by Sylvania immediately upon receipt of the new one. It appears from the testimony of plaintiff's president that plaintiff learned of the nondelivery of the machine from a letter written by Sylvania asking it for machine prices, and that the president thereupon wrote him to the effect that they had one down there and that he, plaintiff's president, was supposed to come down as soon as possible and show them how to install and use it. Nothing further was done by plaintiff towards investigating whether or not the machine had been delivered until October 9, 1947, when the man in charge of such machines for Sylvania wrote with reference to the fact that the arrangements to exchange the machines had been made, and plaintiff's president wrote in reply that the machine had been shipped a long time ago. He further testified that in November, 1947, he went to the plant of the Sylvania Industrial Corporation and there discovered for the first time that the machine had never been delivered; that they then started tracing it and that he wrote the defendant Silver Motor Freight Lines, in March of 1948, advising them of the loss.

We are unwilling to hold that under the circumstances in this case, as disclosed by the evidence above referred to, plaintiff was absolved of the duty to file its claim within the required time. By the terms of the statute and the provisions in the bill of lading, it was required to exercise some diligence to ascertain whether or not the machine had been delivered, so that if it had not been delivered it could file its claim within the required time. That the plaintiff exercised no diligence whatever to ascertain whether or not the machine had been delivered

is clearly disclosed by the testimony of its president.

Plaintiff's failure to file its claim within the required time is fatal to its action. Delphi Frosted Foods Corp. v. Illinois Central R. Co. (C.C.A. 6), 188 F. 2d 343.

Reversed, with directions to render judgment for defendants.

HALLEY, V.C.J., and CORN, GIBSON, and JOHNSON, JJ., concur.